UNITED STATES of America,
Plaintiff,

v.

DISTRICT COUNCIL OF NEW YORK
CITY and Vicinity of the United
Brotherhood of Carpenters and Join-
ers of America, et al., Defendants.

90 Civ. 5722 (VM)

United States District Court,
S.D. New York.

Signed 05/19/2017

Gillian Costello, James M. Murphy, Spi-
vak, Lipton, Watanabe, Spivak, Moss &
Orfan LLP, New York, NY, for Plaintiff.

Adam R. Schwartz, Mark Alan Rosen,
McElroy, Deutsch, Mulvaney & Carpenter,
LLP, Newark, NJ, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States
District Judge.

On April 21, 2017, the United States
Court of Appeals for the Second Circuit
issued a summary order in The Cement
League, New York City and Vicinity Dis-
trict Council of Carpenters v. National La-
bor Relations Board, No. 16–0495–ag(L),
16–0972–ag(XAP). ("Summary Order,"
Dkt. No. 1758, at 3–5.) The Summary Or-
der held in abeyance the issuance of a
mandate in that case until the lesser of 30
days from the issuance of the Summary
Order or until the parties advise the Sec-
ond Circuit as to the District Court's view
whether the Summary Order bears upon
matters that are within the jurisdiction of
the District Court's supervision of a con-
sent order in this case, United States v.
District Council of New York City and
Vicinity of the United Brotherhood of Car-
penters and Joiners of America, et al.
(Summary Order at 5.) For the reasons

outlined below, the Court now finds that the Second Circuit mandate should issue.

## I.  BACKGROUND

In light of this case's nearly three-decades-long history before this Court, the Court assumes familiarity with the factual background and lengthy procedural developments in this litigation through April 20, 2017.

On April 21, 2017, the Second Circuit issued the Summary Order denying the petition by The Cement League, New York City and Vicinity District Council of Carpenters ("The Cement League") for review of a decision and order of National Labor Relations Board (the "NLRB"), "which held that a provision of the collective bargaining agreement ('CBA')" between the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council") and The Cement League "violates the National Labor Relations Act ('NLRA') and ordered that the provision not be enforced." [1] (Summary Order at 3.) The provision in question, the "full mobility" provision,[2] "afford[s] employers complete discretion to hire anybody they wish without use of the out-of-work list [3] if and only if the people they

---

1.  See The Cement League & Ne. Reg'l Council of Carpenters & N.Y. City & Vicinity Dist. Council of Carpenters, Party in Interest, 363 NLRB No. 117, 2016 WL 612708, at *1 (Feb. 12, 2016) (hereinafter "NLRB Order").

2.  Any reference to the CBA relates to the CBA entered into by The Cement League and the District Council with a term of July 1, 2015 to June 30, 2019. (See Dkt. No. 1768, at 1 n.1.) This CBA is the successor to the CBA approved by this Court on October 23, 2013 with a term of July 1, 2011 to June 30, 2015. (See Dkt. Nos. 1416–1, 1426.) The CBA contains identical full mobility hiring provisions to those in the previous CBA approved by this Court. (See Dkt. No. 1768, at 1 n.1.)

    As noted by the parties during the May 9, 2017 conference held by this Court, the terms "full mobility" provision or provisions have been used somewhat differently by the NLRB, the Second Circuit, and the parties. The term "full mobility" provision or provisions refers to any clause or section in the CBA which makes reference to an employer's ability to hire employees freely, such as in Article VI, Section II or Article VII, Section 5 of the CBA. In addition, the term "full mobility provisions" is sometimes used to refer, collectively, to Article VI, Section II; Article VII, Section 5; and Article VII, Section 2 of the CBA. Article VII, Section 5 states:

    Notwithstanding any other provisions of this Agreement, the Employer shall be permitted to hire any and all Carpenters, except for the Shop Steward and except as otherwise provided in Article VII, Section 2, without reference to hiring ratios (i.e.,

    the Employer will be able to hire Carpenters, except as specifically limited, under so-called full mobility).
    (Dkt. No. 1416–1, at 25.)
    Article VII, Section 2, states, in pertinent part:
    Any employee who is not a member of the District Council will be matched 1:1 from the District Council's Job Referral List.
    (Id., at 23.)
    This provision is referred to by the parties and parties in interest as the "one-to-one provision," the "one-to-one matching provision," and the "one-to-one exception" to the full mobility provision, among other terms. It is also referred to as one of the several "full mobility provisions."
    Article VI, Section 2, states, in relevant part:
    The remainder of the Carpenters shall be selected by the Employer. Any employees not members of the District Council shall be matched 1:1 from the District Council Job Referral List.
    (Id., at 20.)
    Thus, the first sentence of Article VI, Section 2 is analogous to the "full mobility" provision contained in Article VII, Section 5, and the second sentence of Article VI, Section 2 is analogous to the "one-to-one" provision or exception to the "full mobility" provision akin to Article VII, Section 2.

3.  The "out-of-work list ... is maintained by the NYC Council but is open to nonmembers." (Summary Order at 3.) It is also referred to in the CBA as the "District Council Job Referral List." (Dkt. No. 1416–1, at 20.)

hire are members of the [District Council](Summary Order at 3 (emphasis in original).) "Employers who hire nonmembers must ... match their selected employees one-to-one with hires from the out-of-work list." (Id.)

The Second Circuit upheld the NLRB's finding that the full mobility provision creates the impermissible incentive for an employer "to encourage its employees to join the [District Council] in order to bypass the requirement of matching them one-to-one with hires from the out-of-work list." (Id.) Therefore, the Second Circuit found that the NLRB's conclusion that the provision constitutes an unfair labor practice under the NLRA was reasonable because it had a reasonable basis in law. (Id. at 4–5.) Furthermore, because "[n]either The Cement League nor the [District Council] argued before the [Administrative Law Judge] that the challenged provision of their CBA comports with the NLRA[,]" the Court of Appeals "accept[ed] as uncontested ... that the enforcement of the challenged provision of the CBA violates the NLRA." (Id. at 4.)

However, the Summary Order noted the argument by The Cement League and the District Council that any violation of the NLRA "is merely technical or de minimis and was in any event validated by [the District Court's] order[.] "(Id. at 5.) In light of that argument and this Court's supervision of a consent decree ordered on March 4, 1994 (the "Consent Decree," Dkt. No. 410) under which the CBA in question was approved, the Summary Order held in abeyance the issuance of a mandate "until the lesser of 30 days from the issuance of [the Summary Order] or until the parties advise" the Second Circuit as to this Court's view whether the Summary Order bears upon this Court's supervision of the Consent Decree in this case. (Id.)

On April 26, 2017, this Court ordered the parties to submit a joint letter-brief addressing the question raised by the Summary Order and to appear for a conference addressing the issue. ("April 26 Order," Dkt. No. 1758, at 1–2.) The parties submitted a joint letter-brief dated May 3, 2017, stating each party's position regarding the Summary Order's bearing on matters within the jurisdiction of this Court's supervision of the Consent Decree in this case. (See "Joint Letter," Dkt. No. 1763.)

In the Joint Letter, the District Council argues that the Summary Order does bear upon matters within the jurisdiction of this Court's supervision of the Consent Decree. (See id. at 1–3.) The District Council contends that the Summary Order is at odds with the anti-corruption goals of the CBA, because the invalidated provisions, in particular the one-to-one exception to the full mobility provision, were intended to and do function as "anti-corruption mechanism [s.]" (Id. at 2.) Specifically, the District Council argues that the one-to-one matching provision "virtually guarantee[s] that there will be a substantial complement of District Council members on each jobsite" and that this presence of "Union member eyes and ears" is critical for anticorruption purposes because it is "Union members only who have reported corruption in the workplace to the respective offices engaged in Consent Decree oversight." (Id.) Accordingly, the District Council argues that the one-to-one provision is essential to this Court's anti-corruption objectives. The District Council further argues that any violations of the NLRA are "de minimis" and, therefore, NLRA concerns should give way to this Court's anti-corruption concerns, the NLRB Order should not be enforced, and the Second Circuit mandate should not issue. (Id. at 3.)

The Government's position is that the Summary Order does not bear upon matters within the jurisdiction of this Court's supervision of the Consent Decree. (See id.

at 3–5.) In the Joint Letter, the Government argues that the one-to-one matching provision does not serve an anticorruption purpose and that neither the District Council nor this Court considered the provision to serve such a purpose at the time of adoption (See id. at 3–4.) In support, the Government cites to "the District Council's own description of the [CBA's] 'anti-corruption compliance features'" in its March 29, 2013 letter to this Court. (Id. at 4 (citing "March 2013 Letter," Dkt. No. 1290, at 4).) The Government notes that the March 2013 Letter specifically identifies the "fourth page" of the Memorandum of Understanding ("MOU") between the employer association and the District Council as setting out "the anticorruption compliance features under the CBA and otherwise by the District Council." (Joint Letter at 4 (citing March 2013 Letter at 4); see also "MOU," Dkt. No. 1223, at 11–14.) [4] The Government notes that the MOU lists the one-to-one provision as a "Manning Provision[,]" not an anti-corruption feature. (Joint Letter at 4 (citing MOU at 12).)

In support of its position, the Government also cites to this Court's May 8, 2013 order approving the new CBA language. The Government contends that, because the Court identifies "four 'anti-corruption compliance features'" but does not include the one-to-one exception among them, the Court did not consider the one-to-one provision as an anti-corruption mechanism. (Joint Letter at 4 (citing "May 2013 Order," Dkt. No. 1315 at 6, 10).) Rather, the Government argues that "real-time elec-

tronic reporting and disclosure of carpenters' working hours; properly staffed compliance and ethics programs within the District Council; and other policies and mechanism [sic] within the union" were the anti-corruption measures upon which the Court relied in approving the CBA. (Joint Letter at 4.)

In response to its April 26 Order, the Court also received letters from the NLRB and The Cement League, both of which are parties to the case in which the Summary Order was issued. (See Dkt. Nos. 1761–62, 1764.) By letter dated May 1, 2017, the NLRB informed the Court of its position "that excision of the contract's full-mobility provisions 'does not undermine the court's important anticorruption objectives or its orders supporting those objectives.'" (Dkt. No. 1762, at1.) The NLRB argues that the provisions do not appear to have been intended as anti-corruption measures and, therefore, removing them "does not remove provisions that [do] play a role as an anticorruption measure [sic] (Id. at 4.) Therefore, the NLRB maintains that NLRA objectives are not in tension with this Court's anti-corruption objectives.

By letter dated May 3, 2017, The Cement League argued that, in practical terms, the invalidation of the full mobility provisions would undo the current CBA, force "the parties to renegotiate that agreement," "produce disastrous economic results for the unionized sector of the building construction industry[,]" and "place the Cement League member con-

---

4. The MOU ratified by the District Council on August 22, 2012 and referred to by the District Council in its March 2013 letter is a four-page document entitled "Agreement Between the [District Council] and the Association of Wall-Ceiling & Carpentry Industries of New York, Inc." (MOU at 11.) The fourth page to which the March 2013 Letter and the Government make reference is entitled "Addendum With Respect to Compliance Issues to the [MOU.]" (Id. at 14.) Although the MOU is between the District Council and Wall-Ceiling & Carpentry Industries of New York, Inc., the CBA language in question is based on this MOU and the Court relied on this language when it approved the CBA in its May 8, 2013 order. (Dkt. No. 1315.)

tractors in an untenable financial position." (Dkt. No. 1761, at 1–2.) In light of these "deleterious practical implications" of the NLRB Order, The Cement League endorsed the District Council's argument in the Joint Letter that the mandate should not issue. (Id. at 1.)

On May 9, 2017, the Court held a conference to review the status of this litigation. On that occasion the Court heard argument on the question now before it. ("May 9 Hearing," see Dkt. Minute Entry for May 9, 2017.) In light of the arguments presented during the May 9 Hearing, in which the Court detected substantial differences in the parties' interpretation of the Summary Order, the Court sought clarification from the parties regarding whether the parties understood the Summary Order to invalidate the full mobility provision, the one-to-one exception, or both, and directed the parties to submit supplemental briefing on those issues. (See Dkt. No. 1766.)

By letters dated May 12, 2017, the parties informed the Court of their respective positions. ("Supplemental Briefing," see Dkt. Nos. 1767–68.) The District Council argues that the Summary Order does have the legal effect of invalidating both the full mobility provision and the one-to-one provision pursuant to Article XIX, Section 35 of the CBA. (See Dkt. No. 1768, at 1; see also Dkt. No. 1416–1, at 70.) The District Council notes that Article XIX refers to Article VII, Sections 2 and 5 collectively as the "full mobility hiring provisions" and argues that, as a result, the one-to-one exception "is an integral and inseparable part of the CBA's two 'full mobility hiring provisions.'" (Id. at 2.) Thus, the District Council argues that where one provision is invalidated, so too is the other, and the Summary Order necessarily has the effect of invalidating both provisions. (Id. at 3.) The District Council further argues that the Summary Order has the effect of not

only invalidating the two provisions described above, but also the CBA as a whole, pursuant to Article XIX, Section 35, which provides that "if a 'court of competent jurisdiction ... voids' the CBA's two 'full mobility hiring provisions,' then the CBA is a nullity and the parties shall revert to the CBA in effect on June 30, 2011[.]" (Id. (citing Dkt. No. 1416–1, at 70).)

The Government argues that the Summary Order "and the NLRB order it upheld[ ] do not require invalidation of the 'full mobility' system[.] " (Dkt. No. 1767, at 1.) The Government instead argues that the one-to-one provision (1) "is an exception to the full mobility system" ; (2) is the sole provision to create a preference in hiring for District Council members; (3) is severable from the full mobility provision; and (4) alone can and should be invalidated. (Id. at 1–2.) The Government notes that "[t]he NLRB order only voids the CBA's hiring provisions 'to the extent' they give preference to District Council Members." (Id. at 2.) The Government argues that if only the one-to-one provision is stricken "then there would be no preference for District Council members [and] employers would be free to hire any person, regardless of whether he or she was a District Council member[.]" (Id.) Accordingly, the Government maintains that the Summary Order invalidates only the one-to-one provision and therefore, should the mandate issue, the remaining full mobility provision and CBA would remain intact. (See id. at 3.)

## II. DISCUSSION

The question now before the Court is whether the Summary Order bears upon matters that are within the jurisdiction of this Court's supervision of the Consent Decree in this case. For the reasons stated

below, the Court is persuaded that it does not.

The key question is whether the full mobility provisions were intended to serve an anti-corruption benefit when they were ratified by the District Council or at the time of this Court's approval of the CBA. Because the District Council argues only that the one-to-one provision, not the full mobility provision, serves an anti-corruption purpose, the Court limits its analysis to the one-to-one provision on this basis.

The Court finds that although the one-to-one hiring provisions may, in practice, have some collateral anticorruption benefit, it does not appear from the record that anti-corruption was the intended purpose of the one-to-one provision at the time of bargaining or at the time of this Court's May 2013 Order approving the CBA. In the May 2013 Order, this Court noted that "the CBA includes four 'anticorruption compliance features'" derived from the MOU, such as "an 'electronic time entry program'" and "a computerized compliance program." (May 2013 Order at 6, 10 (citing to March 2013 Letter at 4.)) Neither the Court nor the MOU listed the one-to-one provision as one such anti-corruption feature. (See May 2013 Order at 6, 10; March 2013 Letter at 14.)

Furthermore, in its March 2013 Letter, the District Council itself identified the fourth page of the MOU—aptly titled the "Addendum with Respect to Compliance Issues"—as outlining the anti-corruption features of the CBA. (See March 2013 Letter at 4.) The one-to-one provision is listed not on the fourth page of the MOU, but rather, on the second page as a "Manning"—or staffing—provision. (MOU at 14.) The District Council gave no indication in its March 2013 Letter that this "Manning" provision served a critical anticorruption purpose, nor that anti-corruption measures were listed elsewhere in the MOU. (See March 2013 Letter at 4.) Thus,

although the one-to-one provision may have produced some anti-corruption benefit, as the District Council argued at the May 9 Hearing, that value appears to be incidental and not by express design.

Furthermore, the Court finds that this Court's approval of the CBA on May 8, 2013 did not consider whether any provision of the CBA potentially operated as a violation of the NLRA. That question was not presented or argued before the Court, nor did the Court consider it in any way. Had such a prospect been raised as a serious issue, it is entirely possible that this Court may have reached a different conclusion as regards approval of the CBA. Consequently, although the District Council argued before the Second Circuit "that the NLRB should defer to [the District Court's] approval, notwithstanding any technical NLRA violation[,]" that approval should not be interpreted as this Court's endorsement of possible NLRA violations. (Summary Order at 5.)

During the May 9 Hearing, the parties confirmed that, at the time of this Court's approval of the CBA, no party brought to the Court's attention the possibility that the full mobility provision or one-to-one provision could be in violation of the NLRA. In fact, the May 2013 Order's silence with respect to the NLRA corroborates this view. (See generally May 2013 Order.) The Court agrees with the Summary Order and the NLRB Order that "the district court did not consider compliance with the NLRA and did not premise approval upon it[.]" (Summary Order at 5.) Aware now that some portion of the CBA violates the NLRA, this Court disagrees with the District Council that the violation is de minimis and finds untenable its position that the provisions should be enforced notwithstanding the violation.

Finally, although not posed directly by the Second Circuit, the Court finds that

the Summary Order and the issuance of a mandate presents the following practical questions: (1) which provision(s) of the CBA is/are invalidated by the Summary Order, and (2) whether the existing CBA is still in force or void in light of the invalidated provision(s). The Court finds that the Summary Order invalidates only the one-to-one language in the full mobility provisions, as stated in Article VI, Section 2 and Article VII, Section 2 of the CBA, and that, as a result, the remainder of the CBA approved by this Court is still valid.

As the NLRB Order states, the Administrative Law Judge "found the violation because the employers' highly valued contractual right to bypass the out-of-work list hinged on their hiring union members and thus impermissibly encouraged union membership." The Cement League & Ne. Reg'l Council of Carpenters & N.Y. City & Vicinity Dist. Council of Carpenters, Party in Interest, 363 NLRB No. 117, 2016 WL 612708, at *1 (Feb. 12, 2016) (emphasis in original). The NLRB Order further "emphasize [s] the limited nature of [the NLRB's] finding": "The hiring provisions at issue violate the Act because they condition 'full mobility'—that is, the right of the Cement League employers to hire without reference to the out-of-work list—on hiring [District Council] members." Id. at *2 (emphasis in original). In other words, and as stated in its "Conclusions of Law[,]" the NLRB found The Cement League and the CBA to be in violation of the NLRA only "to the extent that [the full mobility] provisions give preference in hiring based on membership in that labor organization[.]" Id. at *3 (emphasis added). For this reason, in its "Order" the NLRB directed The Cement League to "[c]ease and desist from . . . [m]aintaining and/or otherwise giving effect to provisions in its collective-bargaining agreement with the [District Council] that give preference in hiring based on membership in that labor organization[,]" and to "[n]otify all employers in the [Cement League] association that, to the extent that . . . article VI, section 2, article VII, section 2, [and] article VII, section 5 . . . give preference in hiring based on membership in [the District Council], those provisions violate the Act and can no longer be maintained or given any force or effect." Id. (emphasis added).

The Summary Order and NLRB Order thus invalidate the full mobility provisions only to the extent that they violate the NLRA by impermissibly encouraging membership in a union. Although the Summary Order invalidating the full mobility provisions does not use such qualifying language and might conceivably be read to invalidate any and all such full mobility provisions, the Summary Order upholds the NLRB Order, which in turn makes clear "the limited nature of [the NLRB's] finding[.]" The Cement League, 363 NLRB No. 117, 2016 WL 612708, at *2. This Court finds that it is the language of the one-to-one provision that causes the full mobility system as a whole to violate the NLRA. If any reference to the one-to-one provision or one-to-one matching is excised from the CBA—such as the second sentence of Article VI, Section 2, the entirety of Article VII, Section 2, and any reference to Article VII, Section 2 within Article VII, Section 5—then the full mobility structure ceases to violate the NLRA. Indeed, without such language, Article VI, Section 2 simply reads: "The remainder of the Carpenters shall be selected by the Employer." (Dkt. No. 1416–1, at 20.)

Likewise, Article VII, Section 5 reads: "Notwithstanding any other provisions of this Agreement, the Employer shall be permitted to hire any and all Carpenters, except for the Shop Steward . . . without reference to hiring ratios (i.e., the Employer will be able to hire Carpenters, except as specifically limited, under so-called full mobility)(Id. at 25.) Thus, the one-to-one

provision language is itself the full extent to which the full mobility provisions impermissibly provide incentive for employees to join the District Council. Thus, because invalidating the language of the one-to-one provision would be sufficient to comply with the mandate of the Second Circuit, it is not necessary to invalidate the remainder of the full mobility provision.

Furthermore, the Court finds that Article XIX, Section 35 is not triggered and the CBA is still valid. Article XIX, Section 35 states:

> [I]f at any time during the term of this Agreement the United States District Court for the Southern District of New York or any other court of competent jurisdiction voids the provisions of Article VII, Section 2 <u>and</u> Article VII, Section 5 (i.e., The [sic] so-called full mobility hiring provisions), this Agreement shall be come [sic] a nullity . . . .

(Dkt. No. 1416–1, at 69 (emphasis added).)

Without reference to the one-to-one language, the full mobility provision contained in Article VII, Section 5 would be in compliance with the Summary Order and continue to be enforceable. Therefore, the Summary Order does not "void" Article VII, Section 2 <u>and</u> Article VII, Section 5. Accordingly, the Court finds that without the one-to-one provision the CBA would not be "a nullity" and the parties need not revert to preceding CBAs.

### III.  ORDER

Accordingly, it is hereby

**ORDERED** that this Court agrees with the Summary Order issued by the United States Court of Appeals for the Second Circuit in <u>The Cement League, New York City and Vicinity District Council of Carpenters</u> v. <u>National Labor Relations Board</u>, No. 16–0495–ag(L), 16–0972–ag(XAP), and

**ORDERED** that a mandate should issue.

**SO ORDERED.**